

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MEG/JS     *271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 18, 2020

By ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:    United States v. Desmonn Beckett, et al.
                    Criminal Docket No. 20-213 (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this letter in opposition to defendant Desmonn Beckett's motion for bond in the above-captioned case, which follows the defendant's earlier application for release that was presented to and rejected by Chief United States Magistrate Judge Cheryl L. Pollak. A proffer of the relevant facts, the defendant's criminal history and the government's arguments as to why detention is warranted are set forth in detail in the government's June 24, 2020 letter seeking the entry of permanent orders of detention for the defendant and each of his six co-defendants, which is attached and incorporated by reference herein. The government now seeks to supplement its original detention letter by writing to provide additional procedural history and to respond to certain arguments raised in counsel's motion filed on August 15, 2020, see ECF Dkt. Entry 81 ("Def. Mtn.").

      For the reasons set forth below and in the government's original detention letter, the government respectfully requests that the Court deny the defendant's motion, as Chief Magistrate Judge Pollak properly concluded that the defendant is both a flight risk and a danger to the community, and that no combination of conditions could secure his appearance at trial and the safety of the community.

I.     Procedural History

      The defendant was arrested on June 24, 2020, after having been charged by indictment with Accessory After-The-Fact to Attempted Murder In-Aid-Of Racketeering and Assault In-Aid-Of Racketeering, in violation of Title 18, United States Code, Section 3. The

defendant appeared before Chief Magistrate Judge Pollak for arraignment the same day and, through counsel, sought to be released on a bond secured by five sureties and other conditions.  See ECF Dkt. Entry 25.  After hearing oral argument from both parties—and the recommendation from Pretrial Services that the defendant be detained—Chief Magistrate Judge denied the defendant's request and entered a permanent order of detention.  See ECF Dkt. Entry 26 ("Based on the charges, the court finds the bail package insufficient to overcome the danger to the community posed by def[endant].").  On August 15, 2020, the defendant filed the instant motion for bond seeking to be released to home detention on a bond signed by six financially responsible sureties.  See Def. Mtn. at 3-4.

II.     Argument

As set forth at length in the government's original detention letter, the defendant poses a danger to the community based on, among other things, the incredibly serious nature of the charged crime—ferrying a fellow gang member to and from the scene of carefully calculated attempt to execute a gang rival.

In support of his motion for release, the defendant argues that the charged crime is "not a crime of violence and does not involve the use of a firearm."  Def. Mtn. at 2.  These claims are baseless.  As courts in this district have recognized, accessory after the fact to a crime of violence—such as attempted murder—is a crime of violence for purposes of the Bail Reform Act.  See United States v. Cicale, No. 06-CR-285 (NGG), 2006 WL 2252516, at *3 (E.D.N.Y. Aug. 7, 2006) ("Cicale is charged with accessory after the fact to murder, which I find to be a 'crime of violence' under Section 3156 of the [Bail Reform Act]. . . . Accessory after the fact to murder by its very definition involves knowledge that the offender's actions aid in the commission of a violent act.").[1]  The crime the defendant aided also involved a firearm, which was used in the murder attempt.

The defendant also wrongly claims that the government's case is "weak" and appears to be "lacking in proof of Mr. Beckett's knowledge that the underlying crime had been committed."  Def. Mtn. at 2.  To the contrary, evidence already provided to the defendant in discovery offers significant proof that he not only played a critical role in the shooting, which left the victim paralyzed, but that he did so knowingly.

For example, cell site evidence for the defendant's cellphone, obtained pursuant to a lawfully issued search warrant, reveals that at 9:53 p.m. on June 28, 2018—approximately one hour before the shooting—the defendant's cellphone was in the vicinity

---

[1] The Second Circuit has recently held that the Bail Reform Act's definition of "crime of violence" is not void for vagueness under Johnson v. United States, 135 S. Ct. 2551 (2015), and its progeny.  See United States v. Watkins, 940 F.3d 152, 159 (2d Cir. 2019), cert. denied, 140 S. Ct. 2584 (2020).  Thus, the holding of United States v. Davis, 139 S. Ct. 2319 (2019), that certain inchoate crimes are not crimes of violence for purposes of 18 U.S.C. § 924 is inapplicable.

2

of the location in Queens where the shooting occurred.  Corresponding surveillance footage from the area shows that a vehicle consistent in make and color with one registered to the defendant at the time (hereinafter, the "defendant's vehicle") arrived near the scene of the shooting around that time.  Additional footage shows the defendant's vehicle in approximately the same location—an access road that abutted a hotel parking lot—an hour later when the shooter exited the passenger side door, moved stealthily across the parking lot to where the victim was sitting in a parked car and fired at him repeatedly from a close range.  The shooter then ran back to the defendant's waiting vehicle, which then drove away.

This evidence suggests that the defendant lay in wait with the shooter for approximately one hour before the shooter exited the defendant's vehicle and sought to end another man's life, and that the defendant then fled with the shooter immediately thereafter.  The defendant was not an unwitting participant in this calculated murder attempt.  The defendant's prior conviction for possessing an illegal firearm and his membership in a gang of purported "elite assassins"—an identity they embrace with pride—offers further proof of the danger he poses to the community.

While the defendant notes that he previously worked for the post office, that position did not prevent him from being a member of a violent street gang or from committing the charged offense.  Given that he will certainly lose that job upon conviction—if he has not been fired already—it does even less now to limit his dangerousness or reduce his incentive to flee.

When the possibility of violence is so great, even onerous conditions of release are inadequate to protect the community.  See United States v. Kelly, No. 19-CR-286 (AMD), 2020 WL 2528922, at *3 (E.D.N.Y. May 15, 2020) ("Nor are the defendant's proposed measures—that he be kept on home confinement and monitored by pretrial services—sufficient to eliminate the danger to the community.").  That is why the Second Circuit has repeatedly rejected elaborate bail packages for violent defendants, even ones that include "home detention and electronic monitoring," which the Court has explained try to "replicate a detention facility without the confidence of security such a facility instills.  If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendant] that [he] will obey the conditions."  United States v. Millan, 4 F.3d 1039, 1049 (2d Cir. 1993) (citation and internal quotation marks omitted); see also United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks omitted); accord United States v. Dono, 275 F. App'x 35, 37 (2d Cir. 2008) (Sotomayor, J., Livingston, J., and Preska D.J. (sitting by designation)) (same).

III.      Conclusion

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion for release on bond.

          Respectfully submitted,

          SETH D. DuCHARME
          Acting United States Attorney

By:      /s/
          Margaret E. Gandy
          Jonathan Siegel
          Assistant U.S. Attorneys
          718-254-7000

cc:    The Hon. Kiyo A. Matsumoto (by ECF)
       Clerk of Court (KAM) (by ECF)
       Counsel for Desmonn Beckett (by ECF)