

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TH:JRS
F. #2018R01858

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 25, 2021

By ECF

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Desmonn Beckett
              Criminal Docket No. 20-213 (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for September 1, 2021 at 11:00 a.m. For the reasons set forth below, the government submits that a sentence within the applicable United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 70 to 87 months in custody is reasonable and appropriate in this case.

I.    Background

      A.    Factual Background

      The defendant is a member of the Elite Assassin Milla ("E.A.M."), a set of the Bloods street gang. See Presentence Investigation Report ("PSR") ¶ 2. As a member of E.A.M., the defendant was expected to earn money through criminal means — such as drug dealing — and to engage in violence against the gang's rivals. The defendant lived up to those expectations.

      In particular, the defendant participated in the attempted murder of gang rival John Doe #1. For several years, members and associates of E.A.M. had been trying to kill John Doe #1 as retribution for the 2015 murder of E.A.M. member Jonathan Thomas. See PSR ¶¶ 4-5. In 2018, members and associates of E.A.M. — including co-defendants Tyshawn Corbett, Marlon Bristol, and Devon Bristol — engaged in a months-long effort to

stalk John Doe #1 so that he could be found and murdered.  See PSR ¶ 5.  As part of that plan, these individuals placed a GPS tracker on John Doe #1's car so that his movements could be monitored.  See id.

On June 28, 2018, the defendant drove Corbett to an access road next to a hotel parking lot in Jamaica, Queens, where they lay in wait for John Doe #1 for approximately an hour.  See PSR ¶ 6.  When John Doe #1 arrived at the location, Corbett exited the defendant's car, stealthily made his way to John Doe #1's car, and fired repeatedly at John Doe #1, striking him approximately six times.  See id.  Corbett then ran back to the defendant's waiting car and got back in.  See id.  The defendant then sped away.  See id.

John Doe #1 survived the attack but was left permanently paralyzed.  See id.

### B.    The Defendant's Criminal History

On December 13, 2015, the defendant was arrested in possession of a firearm concealed inside his vehicle.  See PSR ¶ 26.  The defendant was initially indicted with felony weapons possession charges, the defendant ultimately pleaded guilty to a misdemeanor charge of criminal possession of a weapon in the fourth degree.  On January 18, 2017 (approximately 17 months prior to the instant offense), the defendant was sentenced to a conditional discharge.  See id.

### C.    Procedural History

On June 18, 2020, the defendant was charged by indictment with one count of being an accessory after the fact to attempted murder in-aid-of racketeering.  See ECF Dkt. No. 1 ¶¶ 35-36.  The defendant was arrested on June 23, 2020, and was ordered detained by the Honorable Cheryl L. Pollak on June 24, 2020.  See ECF Dkt. No. 25.  On August 15, 2020, the defendant moved for bail before this Court, which motion was denied.  See ECF Dkt. No. 81; ECF Order dated Aug. 31, 2020.

On April 7, 2021, the defendant pleaded guilty pursuant to a plea agreement to the sole count against him.  See ECF Dkt. No. 120.

## II.    Guidelines Calculation

Under the Guideline for accessory after the fact (U.S.S.G. § 2X3.1), the offense level is the lower of 30 or six levels below the offense level for the underlying offense.  Here, the underlying offense is attempted murder, which carries the below offense level:

| | | |
|---|---|---:|
| | Base Offense Level of Underlying Offense (§ 2A2.1(a)(1)) | 33 |
| Plus: | Victim sustained permanent bodily injury (§ 2A2.1(b)(1)(A)) | +4 |
| | Total: | 37 |

Because six less than 37 (i.e., 31) is more than 30, the offense level pursuant to U.S.S.G. § 2X3.1(a)(3)(A) is 30.  With an additional three-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the applicable adjusted offense level is 27.  This is the same calculation applied in the PSR.  See PSR ¶¶ 15-24.

Based on an offense level of 25 and a Criminal History Category of I, the defendant is subject to an advisory Guidelines range of 70 to 87 months in custody.  See PSR ¶ 60.[1]

III.     Argument

The Guidelines range accurately reflects the seriousness of the defendant's conduct aiding in an attempted murder and in facilitating the shooter's escape from the crime scene.  See 18 U.S.C. § 3553(a)(1), (a)(2)(A).  Moreover, a sentence within the Guidelines range will provide appropriate deterrence to the defendant and to others contemplating similar acts and will adequately protect the public from further crimes by the defendant.  See 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C).

Although the defendant suggests that his crime was committed out of misplaced family loyalty (see ECF Dkt. No. 143), that claim dramatically understates the defendant's culpability.  The defendant actively participated in a planned assassination that left a man paralyzed.  And that behavior cannot be considered aberrant.  By joining E.A.M., the defendant had committed himself to a criminal lifestyle and to a life of violence.  Those were choices the defendant made for himself.

Those choices are particularly disheartening given the defendant's other circumstances.  While many defendants in similar cases argue that the lack of economic opportunity or the burdens of a criminal record drove them to a gang association, the defendant can make no such excuse.  The defendant had steady employment and income.  The defendant had already been caught once committing the serious crime of possessing a firearm but had managed to avoid serious consequences through a misdemeanor plea.  Rather than learning a lesson from that experience and clinging to the opportunities his job provided him and his family, the defendant chose instead to prioritize his status as a member of the gang.

The level of dedication to the gang shown by the defendant's actions, the lack of deterrent effect from the defendant's prior conviction, and the devastating consequences of the defendant's actions, all warrant a serious sentence.  A sentence within the applicable Guidelines range — which is well below the range that would have applied if the defendant had been charged with aiding and abetting the shooting, rather than merely acting as an

---

[1]     The calculation is the same calculation set forth in the defendant's plea agreement, except that the plea agreement allowed for an additional one-point reduction if the defendant's guilty plea was part of a global resolution.  Because there was no global resolution, the defendant is not entitled to the additional reduction.

accessory after the fact — would appropriately balance those factors with the defendant's role and other characteristics. Accordingly, the Guidelines sentencing range is sufficient, but not greater than necessary, to achieve Section 3553(a)'s purposes.

V.  Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing, see 18 U.SC. § 3553(a)(2), which, in this case, is within the applicable Guidelines range of 70 to 87 months in custody.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By:   /s/ Jonathan Siegel
Jonathan Siegel
Assistant U.S. Attorney
718-254-6293

cc:   Clerk of the Court (KAM) (by ECF)
Samuel Gregory, Esq. (by ECF and e-mail)
Jennifer Fisher, United States Probation Officer (by e-mail)