```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,
                                              MEMORANDUM & ORDER
            -against-
                                              20-CR-213-3 (KAM)

DESMONN BECKETT,

                  Defendant.
-----------------------------------X
```
KIYO A. MATSUMOTO, United States District Judge:

Defendant Desmonn Beckett has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 166 ("Def.'s Mot.").) For the reasons set forth below, the motion is respectfully denied.

## BACKGROUND

On April 7, 2021, Defendant pleaded guilty pursuant to a plea agreement to count sixteen of the above-captioned indictment, charging him with being an accessory after the fact to attempted murder in aid of racketeering. (4/7/21 Minute Entry.) According to the Presentence Investigation Report,[1] the charge arose from Defendant's involvement in the Elite Assassin Millas, a subset of the Bloods street gang. (ECF No. 138 ("PSR") ¶ 2.) Specifically, the PSR reported that on June 28, 2018, Mr. Beckett participated in the attempted murder of a rival gang member by

---

[1] The court recounts the facts set forth in the PSR and admitted to by Defendant in his allocution only as necessary to resolve the instant motion. Nothing in this Memorandum and Order should be read to comment on Mr. Beckett's co-defendants who have elected to proceed to trial.

1

driving a co-defendant to an access road next to a hotel parking lot in Jamaica, Queens, where the co-defendant allegedly exited Mr. Beckett's car, fired repeatedly at the victim, and left him permanently paralyzed. (*Id.* ¶¶ 5-6.) During his plea allocution, Defendant stated that he "acted as an accessory after the fact to an attempted murder in aid of racketeering" and acknowledged that he knew his co-defendant shot the victim in an attempt to murder him. (Plea Tr. at 21-22.)

On September 1, 2021, the court sentenced Defendant to 64 months of imprisonment, below the applicable Guidelines range of 70 to 87 months. (9/1/21 Minute Entry.) Just four days later, Defendant requested that the Bureau of Prisons ("BOP") file a motion for compassionate release on his behalf. (ECF No. 172-1.) The BOP denied Defendant's request, explaining that he did not meet any of BOP's criteria for compassionate release. (*Id.*) Thereafter, Defendant filed the instant *pro se* motion for compassionate release.

On January 28, 2022, Defendant filed a motion to appoint counsel with respect to his motion for compassionate release. (ECF No. 179.) Defendant's counsel at sentencing, Mr. Samuel Gregory, Esq., submitted a letter to the court on February 1, 2022, representing that he did not intend to assist Defendant in supplementing his motion for compassionate release. (ECF No. 182.) On February 15, 2022, the court denied Defendant's motion to

2

appoint counsel.  (2/15/22 Minute Order.)  As the court explained, "a defendant has no right to the assistance of counsel in filing a motion for compassionate release." *United States v. Fleming*, 5 F.4th 189, 193 (2d Cir. 2021).  The court also declined to exercise its discretion to appoint counsel, finding that Defendant's motion had a "low likelihood of success." *United States v. Cajigas*, 2021 WL 1392008, at *1 (S.D.N.Y. Apr. 12, 2021).  The court nevertheless permitted Defendant to supplement his *pro se* motion, which he did on March 3, 2022.  (ECF No. 183 ("Def.'s Suppl. Mot.").)

## LEGAL STANDARD

The compassionate release provision, 18 U.S.C. § 3582(c)(1)(A), provides an exception to the general rule that a court may not modify a term of imprisonment once it has been imposed.  A defendant must satisfy three requirements for the court to grant a motion for compassionate release.  *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).

"First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting [compassionate release] from prison authorities." *Id.*  In particular, a defendant generally must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait until 30 days after "the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. §

3

3582(c)(1)(A). As explained below, the exhaustion requirement does not preclude the court from considering Mr. Beckett's motion.

Second, a court must find that "extraordinary and compelling reasons" warrant a sentence reduction. *Id.* § 3582(c)(1)(A)(i). The passage of the First Step Act of 2018 "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "[A] district court's discretion in this area — as in all sentencing matters — is broad." *Id.* Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237-38 (second alteration in original) (quoting 28 U.S.C. § 994(t)). As set forth below, extraordinary and compelling reasons have not been shown.

Third, the court must consider "'the factors set forth in section 3553(a) to the extent that they are applicable' before it can reduce the defendant's sentence." *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Section 3553(a) factors include, among other things, (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to afford adequate deterrence to criminal

4

conduct, (3) the need for the sentence imposed to protect the public from further crimes of the defendant, and (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a). As explained, *infra*, the foregoing Section 3553(a) factors weigh against granting compassionate release.

"The defendant carries the burden of showing that he . . . is entitled to a sentence reduction under the statute." *United States v. Garcia*, 2021 WL 1616914, at *3 (E.D.N.Y. Apr. 26, 2021) (citation omitted). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Id.* (citation omitted).

## DISCUSSION

### I. Exhaustion

To bring a motion for compassionate release, a defendant generally must wait until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "[D]istrict courts in this circuit have split on how to interpret" this statutory provision. *United States v.*

5

*Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (per curiam). Although some district courts have concluded that the 30-day waiting period is applicable only when the BOP does not respond to the defendant's request, other courts have found that "the statute's 30-day waiting period authorizes the inmate's filing a motion regardless of whether the warden responds to the inmate's request for compassionate release." *Id.* at 123-24. Here, Defendant did not administratively appeal the BOP's initial denial, but rather simply waited until 30 days after filing his request with BOP to file the instant motion. (ECF No. 172-1.)

Like the Second Circuit in *Saladino*, the court need not resolve this question because Section 3582(c)(1)(A)'s exhaustion requirement is not a jurisdictional limitation, but rather is a "claim-processing rule that may be waived or forfeited by the government." 7 F.4th at 121. Here, the government has forfeited any argument that the exhaustion requirement is not satisfied because its opposition focuses exclusively on the other two requirements for granting a compassionate release motion. (ECF No. 172 ("Gov't's Opp'n") at 4-5.) Accordingly, the court "is now free to consider the merits of [Defendant's] motion." *Saladino*, 7 F.4th at 123.

## II. Extraordinary and Compelling Reasons

Although the exhaustion requirement does not preclude consideration of Defendant's motion, he has failed to show that

6

extraordinary and compelling reasons warrant a sentence reduction. First, Defendant argues that if the court granted compassionate release, Defendant could serve as a "constructive role model for others" by performing community service. (Def.'s Mot. at 1-3.) "[A] compassionate-release motion," however, "is not an opportunity to second guess or to reconsider the sentencing court's original decision." *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020) (quotations and citation omitted). At the time of sentencing, the court considered all available types of sentences, *see* 18 U.S.C. § 3553(a)(3), including the possibility of community service as a condition of probation, as well as defense counsel's request for eighteen months of incarceration followed by one year of home confinement. (Sentencing Tr. at 30, 39.) Although Defendant may disagree with the court's conclusion that 64 months of imprisonment was sufficient, but not greater than necessary, his dissatisfaction with the court's imposition of a custodial sentence does not constitute an "extraordinary and compelling reason" for a sentence reduction.

Second, Defendant argues that the risks posed by the COVID-19 pandemic justify a sentence reduction. (*See, e.g.*, Def.'s Mot. at 4-16.) The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison," however, "alone cannot independently justify compassionate release." *United States v. Robinson*, 2022 WL 2204126, at *2 (2d Cir. June

7

21, 2022) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)); *see also, e.g.*, *United States v. Lino*, 2021 WL 5759699, at *2 (E.D.N.Y. Dec. 3, 2021) ("[T]he risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." (citation omitted)). Defendant is 29 years old and fortunately does not suffer from any serious health conditions that place him at a heightened risk of death or serious illness from COVID-19. (PSR ¶¶ 42-43.) Although Defendant notes that he has the sickle cell trait (Def.'s Suppl. Mot. at 2), "[t]hus far, the CDC has identified only sickle disease, not merely carrying the trait, as increasing th[e] risk" of severe illness from COVID-19. *United States v. Clarke*, 2021 WL 1948492, at *2 (S.D.N.Y. May 14, 2021); *see also, e.g.*, *United States v. Wright*, 2022 WL 134870, at *6 (S.D.N.Y. Jan. 13, 2022) ("[T]he CDC has not identified having sickle cell *trait* – as opposed to sickle cell *disease* – as a risk factor that would increase one's risk for severe COVID-19 illness."); *United States v. DeBerry*, 2020 WL 7395356, at *6 (W.D.N.Y. Dec. 17, 2020) (similar). In addition, the fact that Defendant's current facility – FCI Danbury – has no active cases of COVID-19 weighs against finding that extraordinary and

8

compelling reasons warrant a sentence reduction. *See* https://www.bop.gov/coronavirus/ (last visited July 19, 2022).

A finding of extraordinary and compelling reasons would be particularly unwarranted in this case due to Defendant's previous recovery from COVID-19 and refusal of a COVID-19 vaccine. First, Defendant states that he was infected with COVID-19 prior to his incarceration. (Def.'s Mot. at 9.) *See, e.g., United States v. Jara*, 2022 WL 873305, at *1 (2d Cir. Mar. 24, 2022) (affirming denial of compassionate release where the defendant "contracted and recovered from COVID-19"); *United States v. Denko*, 2022 WL 1124826, at *1 (E.D.N.Y. Apr. 14, 2022) ("Where a defendant has contracted and recovered from coronavirus, courts in this district have declined to find extraordinary and compelling factors favoring release." (citation omitted)). Second, the record reflects that Defendant twice refused a COVID-19 vaccine. (ECF No. 172-2.) *See, e.g., United States v. Folkes*, 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022) ("Courts have nearly uniformly denied compassionate release to defendants who . . . were offered yet refused the vaccine."). In short, Defendant's "refusal to take the COVID-19 vaccine and his prior recovery from COVID-19 weigh against a finding that extraordinary and compelling circumstances exist." *United States v. Skyers*, 2021 WL 2333556, at *3 (E.D.N.Y. June 7, 2021).

9

Finally, Defendant argues that the conditions of his confinement warrant a sentence reduction. (*See, e.g.*, Def.'s Mot. at 3-13.) In imposing Defendant's sentence, however, the court previously considered that he "experienced the harsh conditions of the MDC during the COVID-19 pandemic," and imposed a sentence below the advisory Guidelines. (Sentencing Tr. at 39-40.) *See, e.g.*, *United States v. Marmolejos*, 2021 WL 807128, at *4 (S.D.N.Y. Mar. 3, 2021) (finding that "harsh conditions at MDC Brooklyn . . . d[id] not suffice to justify a reduced sentence . . . largely because the Court already took these conditions into account in imposing sentence several months ago"). In addition, although the court acknowledges that "the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure," and thus, "they do not rise to the level of extraordinary and compelling." *United States v. Veliu*, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) (citation omitted). In sum, the court concludes that Defendant has failed to show that extraordinary and compelling reasons warrant a sentence reduction in this case.

**III. Section 3553(a) Factors**

Even assuming Defendant could demonstrate extraordinary and compelling reasons, the court concludes that the factors in Section 3553(a) weigh against granting compassionate release. In this context, the Section 3553(a) inquiry "often involves

10

assessing the proportion of a defendant's stated sentence yet to be served." *United States v. Kantor*, 853 F. App'x 723, 726 (2d Cir. 2021). Here, Defendant has served approximately 25 months (with credit for time served) of his 64-month sentence, which was below the applicable Guidelines range of 70 to 87 months. (*See* Sentencing Tr. at 40 (providing credit for time served since June 23, 2020).) Because he has served less than 40% of his below-Guidelines sentence, the court finds that granting a sentence reduction would be inconsistent with several Section 3553(a) factors, including the need for Defendant's sentence to provide just punishment, reflect the seriousness of the offense, promote respect for the law, protect the public, and deter Defendant and others. 18 U.S.C. § 3553(a)(2)(A)-(C); *see, e.g.*, *United States v. Daniels*, 2022 WL 2203832, at *1 (2d Cir. June 21, 2022) (affirming denial of compassionate release where defendant served "roughly half" of his sentence); *United States v. Williams*, 2022 WL 1554649, at *2 (2d Cir. May 17, 2022) (similar); *United States v. DiMartino*, 2022 WL 761511, at *2 (2d Cir. Mar. 14, 2022) (similar); *see also, e.g.*, *United States v. Cargo*, 2022 WL 244083, at *2 (2d Cir. Jan. 27, 2022) (affirming denial of compassionate release motion and considering the fact that the defendant originally received a below-Guidelines sentence).

As the court noted at sentencing, the nature of Defendant's offense was "extremely serious" and "really horrific."

11

(Sentencing Tr. at 21, 34.) Defendant "actively participated in a planned gang-related shooting that left a man paralyzed." (*Id.* at 39.) Although Defendant served as the driver, "he was aware of the intentions of his co-defendant who shot the victim multiple times at close range after months of planning." (*Id.* at 34.) In imposing a below-Guidelines sentence, the court recognized the mitigating factors that Defendant highlights in his instant motion, including his positive employment record, his commitment to his family and young daughter, his commitment to living "a law-abiding life, going forward," and the difficult circumstances of his incarceration at the MDC. (*Id.* at 21-22, 36-37, 39-40, 44.) Nevertheless, the court concluded that a custodial sentence of 64 months was sufficient, but not greater than necessary, to "reflect the serious nature of his offense, provide specific and general deterrence regarding gang-related violence, protect the public, and . . . provide Mr. Beckett adequate time to reflect on his past actions and prepare for his future away from the destructive and violent gang activities with which he became involved." (*Id.* at 40.) Because the court's conclusion has not changed in the approximately eleven months since Defendant's sentencing, the court finds that the Section 3553(a) factors weigh against compassionate release. *See, e.g., United States v. Ruiz*, 2022 WL 493389, at *4 (E.D.N.Y. Feb. 16, 2022) (Bianco, J.) (denying

12

compassionate release where "[t]he Court's view regarding the defendant's sentence has not changed").

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release is respectfully DENIED. The Clerk of Court is respectfully directed to serve a copy of this Memorandum and Order on Defendant and note service on the docket.

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:   July 19, 2022
         Brooklyn, New York

13